1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ERIC L. GONZALES,                        No.  2:22-cv-1345 KJM CSK P

12                    Plaintiff,

13         v.                                   ORDER AND FINDINGS AND
                                                RECOMMENDATIONS
14    ROBERT KORANDA, et al.,

15                    Defendants.

16

17    **I.      INTRODUCTION**

18           Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19    to 42 U.S.C. § 1983.  Pending before the Court are plaintiff's motion to transfer and motion to

20    amend (ECF Nos. 32, 33), and defendant Koranda's motion for summary judgment (ECF No. 26).

21    For the following reasons, plaintiff's motion to transfer is denied, and this Court recommends that

22    defendant Koranda's summary judgment motion be granted and plaintiff's motion to amend be

23    denied.

24    **II.     PLAINTIFF'S MOTION TO TRANSFER**

25           A.  Background

26           Plaintiff filed his original complaint in the United States District Court for the Northern

27    District of California on July 21, 2022.  (ECF No. 1.)  At that time, plaintiff was incarcerated at

28    the California Training Facility ("CTF") in Soledad, California, located in Monterey County.  (Id.

                                          1

1   at 1.)  Monterey County is located within the jurisdiction of the United States District Court for

2   the Northern District of California.

3       In the original complaint, plaintiff named as defendants Dr. Koranda, Board of Parole

4   Hearings ("Board") staff attorney Lutz, the Board and the California Department of Corrections

5   and Rehabilitation ("CDCR").  (Id.)  On July 26, 2022, citing 28 U.S.C. § 1391(b), the Northern

6   District of California district court transferred this action to this district court because this is the

7   district in which defendants reside.  (ECF No. 4.)  Following the screening of plaintiff's

8   complaint, this action proceeds solely on claim one against defendant Koranda.  (ECF Nos. 10,

9   13.)

10      B.  Discussion

11      In the motion to transfer, plaintiff argues that venue is not proper in the United States

12  District Court for the Eastern District of California because exhibits attached to defendant

13  Koranda's summary judgment motion reflect that defendant Koranda resides in Upland,

14  California.  (ECF No. 32 at 1.)  Upland, California is located in San Bernardino County, which is

15  within the jurisdiction of the United States District Court for the Central District of California.

16  Plaintiff requests that this action be transferred to the district where defendant Koranda resides.

17      Venue is not jurisdictional.  See Libby, McNeill, and Libby v.City Nat. Bank, 592 F.2d

18  504, 510 (9th Cir. 1978).  Venue is determined as of the time the complaint is filed and is not

19  affected by subsequent change of parties.  See Boren v. Harrah's Entertainment, Inc., 2008 WL

20  11419050, at *3 (C.D. Cal. Feb. 13, 2008) (citing Exxon Corp. v. F.T.C., 588 F.2d 895, 899 (3d

21  Cir. 1978), overruled in part on other grounds by Reifer v. Westport Ins. Corp., 751 F.3d 129 (3d

22  Cir. 2014)).

23      28 U.S.C. § 1391(b)(1) provides, in relevant part, that venue is proper in a judicial district

24  in which any defendant resides if all defendants are residents of the State in which the district is

25  located.  All defendants reside in California.  When plaintiff filed this action, venue in the Eastern

26  District of California was proper because defendants CDCR and Board headquarters are located

27  in Sacramento, California in Sacramento County.  Sacramento County is within the jurisdiction of

28  the Eastern District of California.  Accordingly, plaintiff's motion to transfer is denied because

2

venue was proper in the Eastern District of California when plaintiff filed this action.

### III.     PLAINTIFF'S COMPLAINT:  FIRST AMENDMENT CLAIM

Before addressing defendant Koranda's motion for summary judgment and plaintiff's motion to amend, the Court first provides a summary of Plaintiff's current claim.  This action proceeds on the original complaint on a single claim (claim one) against defendant Board psychologist Dr. Koranda.[1]  In claim one, Plaintiff alleges that defendant Koranda interviewed plaintiff for plaintiff's upcoming parole suitability hearing.  (ECF No. 1 at 3.)  During the interview, defendant Koranda asked plaintiff what types of self-help programs plaintiff participated in during the earlier period of plaintiff's present prison term to address the circumstances surrounding plaintiff's crime.  (Id.)  Plaintiff told defendant Koranda that since 1998, plaintiff participated in religious programs, i.e., faith-based, to address the circumstances of his crime.  (Id.)  Defendant Koranda told plaintiff that defendant Koranda did not count faith-based programs as self-help or rehabilitation.  (Id. at 3-4.)  For these reasons, defendant Koranda refused to count plaintiff's Christian faith-based programs as self-help and did not credit plaintiff with participating in self-help programming in the early/mid part of plaintiff's prison term.  (Id. at 4.)  Defendant Koranda wrote that plaintiff had not participated in self-help programming throughout most of his CDCR term.  (Id.)  Plaintiff argues that defendant Koranda's failure to credit plaintiff's faith-based programs as self-help and/or rehabilitation denied plaintiff's right to freedom of religion.  (Id.)  As relief, plaintiff seeks money damages and for the Board to grant a new risk assessment.  (Id. at 3.)

The Court construed claim one to allege a First Amendment claim and ordered service of this claim.  (ECF Nos. 10, 14.)

### IV.     DEFENDANT KORANDA'S SUMMARY JUDGMENT MOTION

Defendant moves for summary judgment on the ground that he did not unlawfully deprive plaintiff of the right to free exercise of plaintiff's religion.

/ / /

---

[1]  Plaintiff voluntarily dismissed claims 2-6 raised in the original complaint.  (ECF No. 13.)

1    A.    Legal Standards for Summary Judgment

2        Summary judgment is appropriate when it is demonstrated that the standard set forth in

3    Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

4    movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

5    judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

10   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

11   56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

12   only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

13   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

14   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

15   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

16   burden of production may rely on a showing that a party who does have the trial burden cannot

17   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

18   should be entered, after adequate time for discovery and upon motion, against a party who fails to

19   make a showing sufficient to establish the existence of an element essential to that party's case,

20   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

21   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

22   necessarily renders all other facts immaterial."  Id. at 323.

23        Consequently, if the moving party meets its initial responsibility, the burden then shifts to

24   the opposing party to establish that a genuine issue as to any material fact actually exists.  See

25   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

26   establish the existence of such a factual dispute, the opposing party may not rely upon the

27   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

28   form of affidavits, and/or admissible discovery material in support of its contention that such a

4

dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

By order and notice filed June 12, 2023 and January 8, 2024 (ECF Nos. 20, 26), plaintiff

1    was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

2    Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

3    Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

4           B.       Undisputed Facts

5           For purposes of summary judgment, the undersigned finds the following facts are

6    undisputed.

7           1.       Plaintiff is a prisoner in the custody of the CDCR, including when he commenced

8    this action.  (ECF No. 26-2 at 2 (defendant's statement of undisputed facts); ECF No. 29 at 2

9    (plaintiff's response).)

10          2.       At all relevant times, defendant Koranda was employed by the Board as a forensic

11   psychologist.  (ECF No. 26-2 at 2; ECF No. 29 at 2.)

12          3.       On March 25, 2022, plaintiff was interviewed by defendant Koranda for a

13   psychological diagnostic evaluation in preparation for a parole suitability hearing.  (ECF No. 26-2

14   at 2; ECF No. 29 at 2.)

15          4.       Plaintiff claims that during this interview, defendant Koranda asked plaintiff

16   about the types of self-help programs he had participated in during his incarceration.  (ECF No.

17   26-2 at 2.)

18          Disputed portion:  In response to undisputed fact no. 4, plaintiff claims that defendant

19   Koranda asked him what types of self-help programs he participated in during the earlier period

20   of his present term to address the circumstances surrounding his crime.  (ECF No. 29 at 2.)

21          5.       Plaintiff responded, in part, that he participated in church programs as part of his

22   rehabilitation.  (ECF No. 26-2 at 2; ECF No. 29 at 3.)

23          6.       Plaintiff claims that defendant Koranda did not count faith-based programs as

24   self-help and that Koranda did not count faith-based programs as rehabilitation.  (ECF No. 26-1 at

25   2; ECF No. 29 at 3.)

26          7.       Plaintiff claims that as a result of this, defendant Koranda did not credit plaintiff

27   as  participating in self-help programs in his prison term.  (ECF No. 26-1 at 2; ECF No. 29 at 3.)

28          8.       The Forensic Assessment Division ("FAD") provides the Board's suitability

                                                        6

hearing panels with comprehensive risk assessments ("CRA") to assist in understanding an inmate's potential for recidivism and future violence if released.  (ECF No. 26-2 at 3; ECF No. 29 at 3.)

9.     The CRA does not substitute for the panel's determination of an inmate's current risk of dangerousness if released to the community but provides important information and expert analysis.  (ECF No. 26-2 at 3; ECF No. 29 at 4.)

10.     The CRA is similar to a report from an expert witness who provides a clinician's opinion, based on standardized risk assessment and tools and the clinician's education and experience.  (ECF No. 26-2 at 3; ECF No. 29 at 4.)

11.     The CRA also contains circumstances about the crime, and the person's prior history and record, which may be considered either in aggravation or mitigation of their risk upon release.  (ECF No. 26-2 at 3; ECF No. 29 at 4.)

12.     The preparation of a CRA is not simply a matter of collecting facts.  (ECF No. 26-2 at 3; ECF No. 29 at 4.)

13.     The psychologist analyzes facts, thought patterns and behavior, and then uses their training, education, and standardized tools to opine on the person's potential risk if released. (ECF No. 26-2 at 3; ECF No. 29 at 4.)

14.     The CRA is a psychologist's report of the assessment risk, which is included as part of the information the hearing panel considers when determining whether or not to grant parole.  (ECF No. 26-2 at 3-4; ECF No. 29 at 5.)

15.     The initial step in preparing the CRA is for the FAC psychologist to review the inmate's central file.  (ECF No. 26-2 at 4; ECF No. 29 at 5.)

16.     The psychologist will note static information about the commitment offense and criminal history.  (ECF No. 26-2 at 4; ECF No. 29 at 5.)

17.     The psychologist will also consider dynamic factors, including the inmate's disciplinary record, medical history, current assignments, and participation in rehabilitative, vocational and educational programming.  (ECF No. 26-2 at 4; ECF No. 29 at 5.)

18.     The FAD psychologist then conducts an extensive interview with the inmate.

(ECF No. 26-2 at 4; ECF No. 29 at 5.)

19.     The interview covers static and dynamic facts, but the clinician also looks into what impact certain historical events have had on the inmate.  (ECF No. 26-2 at 4; ECF No. 29 at 6.)

20.     The clinician focuses on the inmate's current interpretation of the crime and asks questions regarding underlying motivation and factors in commission of the crime.  (ECF No. 26-2 at 4; ECF No. 29 at 6.)

21.     At the interview, the psychologist delves into a broad range of topics, including the inmate's programming efforts, disciplinary infractions and possible parole plans and community support.  (ECF No. 26-2 at 4; ECF No. 29 at 6.)

22.     The clinician also incorporates structured risk assessment instruments, whenever appropriate, including the HCR 20-V3 (Historical Clinical Risk Management-20) and STATIC-99R, which are commonly used instruments by mental health professionals who assess risk of violence of incarcerated individuals.  (ECF No. 26-2 at 5; ECF No. 29 at 6.)

23.     The HCR-20 was developed to help structure decisions about violence risk (based on static and dynamic factors) and it has become the most widely used and best validated violence-risk assessment instrument in the world.  (ECF No. 26-2 at 5; ECF No. 29 at 6-7.)

24.     The  HCR-20 has been translated into 20 languages and adopted or evaluated in more than 35 countries.  (ECF No. 26-2 at 5; ECF No. 29 at 7.)

25.     The STATIC-99R is the State Approved Risk Assessment Tool for Sex Offenders ("SARATSO") in California.  (ECF No. 26-2 at 5; ECF No. 29 at 7.)

26.     The STATIC-99R is administered to provide a baseline estimate of risk for violent and sexual reconviction among offenders who have committed sex crimes. (ECF No. 26-2 at 5; ECF No. 29 at 7.)

27.     It is the most researched and widely administered assessment of sexual reoffending.  (ECF No. 26-2 at 5; ECF No. 29 at 7.)

28.     The HCR-20 and SARATSO were developed to have widespread applicability in correctional and forensic settings and have been cross-validated across many types of offender

8

1   samples and have been in use for more than 25 years.  (ECF No. 26-2 at 5; ECF No. 29 at 7-8.)

2           29.     One item on the HCR-20 considers an incarcerated person's rehabilitative

3   response to the provision of habilitative or rehabilitative services or treatment.  (ECF No. 26-2 at

4   5; ECF No. 29 at 8.)

5           30.     The goal of treatment is to improve deficits in the individual's psychosocial

6   adjustment of functioning.  (ECF No. 26-2 at 6; ECF No. 29 at 8.)

7           31.     This risk factor reflects a history of problems complying with or responding to

8   correctional treatment or rehabilitation designed to improve the person's psychosocial adjustment

9   or mental health and/or to reduce the chance of violence.  (ECF No. 26-2 at 6; ECF No. 29 at 8.)

10          32.     Indicators of a presence of this risk factor include the following: superficial or

11  insincere participation in treatment or supervision; failure to attend treatment or supervision as

12  directed or failure to abide by conditions of treatment.  (ECF No. 26-2 at 6; ECF No. 29 at 8.)

13          33.     In evaluating risk factors, FAD psychologists consider the inmate's participation

14  in programming and treatment that directly address the specific risk factors associated with the

15  incarcerated person's violent and antisocial behavior.  (ECF No. 26-2 at 6; ECF No. 29 at 8-9.)

16          34.     Through the file review, interview, and risk assessments, the FAD psychologist

17  provides empirically based conclusions from relevant sources of information.  (ECF No. 26-2 at

18  6; ECF No. 29 at 9.)

19          35.     The inmate's mental health is assessed and risk factors that have led to violent and

20  antisocial behavior by the inmate are identified, including substance abuse and criminal thinking.

21  (ECF No. 26-2 at 6; ECF No. 29 at 9.)

22          36.     The psychologist is also looking to see if the risk factors have been addressed by

23  the inmate, or whether risk factors are still present and have not been addressed, making the

24  inmate a higher risk upon release.  (ECF No. 26-2 at 7; ECF No. 29 at 9.)

25          37.     Psychologists exercise structured professional judgment, based on the above-

26  described information and factors, in assessing whether the incarcerated person's release would

27  pose a low, moderate, or high risk of danger to society.  (ECF No. 26-2 at 7; ECF No. 29 at 10.)

28          38.     In administering the HCR-20, there is not a numerical risk score or algorithm for

1    determining risk.  (ECF No. 26-2 at 7; ECF No. 29 at 10.)

2         39.    Rather, based on the assessment of static and dynamic factors, the importance

3    they may or may not possess for the given individual, and the degree of intervention estimated to

4    be necessary to prevent violence, clinicians are encouraged to arrive at the appropriate risk level.

5    (ECF No. 26-2 at 7; ECF No. 29 at 10.)

6         40.    The inmate-subject of the CRA is given an opportunity to object to any factual

7    errors.[2]  (ECF No. 26-2 at 7.)

8         41.    The Board considers the CRA as one piece of expert evidence at the parole

9    consideration hearing.  (ECF No. 26-2 at 7; ECF No. 29 at 11.)

10        42.    However, the Board's decision does not ultimately rest on the conclusion of the

11   CRA and the Board can, and may, disregard the CRA's conclusion in its final decision regarding

12   an inmate's release.  (ECF No. 26-2 at 7-8; ECF No. 29 at 11.)

13        43.    Defendant Koranda prepared plaintiff's CRA in March 2022.  (ECF No. 26-2 at 8;

14   ECF No. 29 at 11.)

15        44.    Defendant Koranda administered the HCR-20-V3 and STATIC-99R in assessing

16   plaintiff's risk for violence.  (ECF No. 26-2 at 8; ECF No. 29 at 11.)

17        45.    Under the section "Institutional Behavior and Programming" in the CRA,

18   defendant Koranda inquired about plaintiff's participation in rehabilitative programs.  (ECF No.

19   26-2 at 8; ECF No. 29 at 11.)

20        46.    Under the section "Rehabilitative Programs/Self Help" in the CRA, defendant

21   Koranda wrote, "Mr. Gonzalez has not participated in self-help programing through most of his

22   CDCR term, attesting that he was initially involved in church programs."  (ECF No. 26-2 at 8;

23   ────────────────

24   [2] In undisputed fact no. 40, defendant Koranda cites California Code of Regulations, title 15,
     § 2440 as the regulation containing procedures for inmates to object to a CRA.  (Id.)  In response

25   to undisputed fact no. 40, plaintiff states that § 2440 of Title 15 does not address procedures for
     objecting to a CRA.  (ECF No. 29 at 10.)  Plaintiff is correct.  Section 2440 of Title 15 contains

26   the definition of a Youth Offender.  The procedures for inmates to object to factual errors in a
     CRA were addressed in the settlement agreement reached in Johnson v. Shaffer, 2016 WL

27   3027744 (E.D. Cal. May 27, 2016).  Koranda's incorrect citation to Section 2440 does not affect
     the underlying undisputed fact—that the inmate is given an opportunity to object to any factual

28   errors in a CRA.

ECF No. 29 at 12.)

47.     Defendant Koranda also noted that in recent years plaintiff completed coursework through the Partnership through Re-Entry Program ("PREP"), which included classes such as Victim Impact, Domestic Violence, Cell Phone Use in Prison, Confronting Criminal Thinking, Victim Awareness and Anger Management.  (ECF No. 26-2 at 8; ECF No. 29 at 12.)

48.     At page 6 of the CRA, under the section "Personality Disorder," defendant Koranda stated that plaintiff had a history of engaging in antisocial behavior, impulsivity, deceitfulness, and disregard for the safety of himself and others, dating back to early childhood. (ECF No. 26-2 at 8-9; ECF No. 29 at 12.)

49.     In the CRA, under the section "Analysis of Historic Risk Factors and Current Relevance," defendant Koranda wrote, "Mr. Gonzales displayed 7 of the 10 risk factors for violent recidivism within the *Historical* domain of this instrument, at least to a partial degree. Notably, the ratings from this section are based on the lifetime history of the individual; however, in Mr. Gonzalez's case, several of these factors remain present and at least moderately relevant at this time.  On a positive note, Mr. Gonzalez has not experienced symptoms of a major mental disorder that has necessitated the utilization of mental health services, and he does not have a significant history of substance use or employment problems that impact his risk for violence." (ECF No. 26-2 at 9; ECF No. 29 at 13.)

50.     Under the section "Analysis of Clinical Risk Factors and Current Relevance" in the CRA, defendant Koranda noted that plaintiff exhibited two clinical risk factors for recidivism related to plaintiff's lack of understanding into his engagement in sexual offenses and his lack of participation in structured treatment groups and Sexual Offender Treatment.  (ECF No. 26-2 at 9; ECF No. 29 at 17.)

51.     Defendant Koranda stated in part, under the section, "Violence, Violent Attitudes, Other Antisocial Behavior, Relationships, Traumatic Experiences, Personality Disorder, and Treatment or Supervision Response," that plaintiff had a significant history of violence towards women and had demonstrated a pattern of rule violating behavior in prison recently, obtaining four rules violation reports ("RVR") for possession of a cellular phone.  (ECF No. 26-2 at 9-10;

11

ECF No. No. 29 at 15.)

52.     Under the section "Risk Management Recommendations," defendant Koranda noted that, "Mr. Gonzalez would benefit from group treatment and the completion of relapse prevention plans that focus on physical and sexual violence, relationships, criminal thinking, and anger management."  (ECF No. 26-2 at 10; ECF No. 29 at 14.)

53.     Under the section "Risk Management Recommendations," defendant Koranda also recommended that plaintiff "participate in Sex Offender Treatment, if offered in the institution, but otherwise he should consult with mental health clinicians to determine if he would benefit from addressing his sex offense history within individual therapy sessions."  (ECF No. 26-2 at 10; ECF No. 29 at 14.)

54.     Defendant Koranda's conclusion of the CRA was, "Based upon an analysis of the presence and relevance of empirically supported risk factors, case formulation of risk, and consideration of Mr. Gonzalez's anticipated risk management needs if granted parole supervision (i.e., intervention, monitoring), he represents a Moderate risk for violence.  He presents with elevated risk relative to long-term offenders and non-elevated risk relative to other parolees."  (ECF No. 26-2 at 10; ECF No. 29 at 15.)

55.     Plaintiff's parole suitability hearing was held on June 23, 2022.  (ECF No. 26-2 at 11; ECF No. 29 at 15.)

56.     At plaintiff's parole suitability hearing, plaintiff received a five-year denial of parole.  (ECF No. 26-2 at 11; ECF No. 29 at 15.)

57.     On July 17, 2023, plaintiff filed a "Petition to Advance Hearing Date" under Penal Code § 3041.5(d)(1).  (ECF No. 26-2 at 11; ECF No. 29 at 15.)

58.     In plaintiff's petition to advance, plaintiff noted that since his June 23, 2022 hearing, he had participated in the following self-help programs:  Reentry programs; Visual & Performing Arts; Prison Fellowship Academy; CBI Life Skills (completed); Getting Motivated to Change (completion certificate October 14, 2022); Understanding & Reducing Anger (completion certificate October 14, 2022); Victims Impact (November 30, 2022); Thinking for a Change (completion certification March 3, 2023); Family Relationships (completion certificate May 26,

12

1    2023); Domestic Violence Program (April 27, 2023); and Participation in National Crime

2    Victims' Rights Week (laudatory for participation May 4, 2023).  (ECF No. 26-2 at 11; ECF No.

3    29 at 16.)

4         59.    On July 21, 2023, the Board granted plaintiff's petition to advance and advanced

5    his next parole suitability hearing.  (ECF No. 26-2 at 11; ECF No. 29 at 16.)

6         C.    New Claims Raised in Plaintiff's Summary Judgment Opposition

7         The sole claim proceeding in this lawsuit is claim one in the complaint based on plaintiff's

8    allegation that defendant Koranda violated the First Amendment when he refused to consider

9    plaintiff's faith-based programs as self-help and/or rehabilitation in his assessment of plaintiff's

10   parole suitability.  (ECF No. 14 at 1; see also ECF Nos. 10, 13.)  This is the claim defendant

11   Koranda addressed in his summary judgment motion.  As observed by defendant Koranda in his

12   reply, plaintiff's opposition improperly raises new claims.

13        In his opposition, in addition to the First Amendment claim, plaintiff argues that defendant

14   Koranda violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the

15   Equal Protection Clause when defendant Koranda allegedly failed to consider plaintiff's faith-

16   based programs in his assessment of plaintiff's parole suitability.[3]  (ECF No. 29-2 at 9-15, 20-22.)

17   Plaintiff may not add new claims or theories in an opposition to a summary judgment motion.

18   See Coleman v. Quaker Oats, 232 F.3d 1271, 1294 (9th Cir. 2000) ("Only if the defendants have

19   been put on notice may the plaintiffs proceed on [an alternate] theory at the summary judgment

20   stage"); Pickern v. Pier 1 Imps. (U.S.), Inc., 457 F.3d 963, 969 (9th Cir. 2006) (affirming district

21   court's grant of summary judgment for defendants on theories not originally raised in the

22   complaint because "the complaint gave the [defendants] no notice of the specific factual

23   allegations presented for the first time in [plaintiff's] opposition to summary judgment").

24   Accordingly, this Court does not address plaintiff's Equal Protection and RLUIPA claims raised

25   for the first time in plaintiff's summary judgment opposition.

26   _____

27   [3]  Plaintiff separately filed a motion to amend his complaint to raise a RLUIPA claim (ECF No. 33), which demonstrates plaintiff's recognition that a RLUIPA claim was not alleged in the complaint.  This Court addresses plaintiff's motion to amend later in these findings and

28   recommendations.

1    This Court addresses plaintiff's citation in his opposition to Alvarez v. Hill, 518 F.3d

2    1152 (9th Cir. 2008), which is distinguishable.  In Alvarez, plaintiff filed a complaint seeking

3    redress for violations of the First and Fourteenth Amendments on the grounds that prison officials

4    "burdened substantially" his religious practices.  Id. at 1154-55.  Four months after filing the

5    complaint and before summary judgment, the plaintiff in Alvarez filed a "motion in support of

6    original complaint," where he asserted that the district court had supplemental jurisdiction of his

7    free exercise and RLUIPA claims.  Id. at 1155.  The plaintiff in Alvarez also addressed RLUIPA

8    in his opposition to defendant's summary judgment motion.  Id.  The Ninth Circuit found that

9    defendants had notice that the plaintiff in Alvarez intended to raise a RLUIPA claim based on the

10   reference to RLUIPA in plaintiff's "motion in support of original complaint" filed before

11   summary judgment and the discussion of RLUIPA in plaintiff's summary judgment opposition.

12   Id. at 1158-59.  The Ninth Circuit found that a complaint's failure to cite RLUIPA does not

13   preclude the plaintiff from subsequently asserting a RLUIPA claim.  Id. at 1159.  The Ninth

14   Circuit explained that "Alvarez specifically raised his RLUIPA theory in his post-complaint

15   filings, thereby apprising appellees before summary judgment that he was claiming relief under

16   both the First Amendment and RLUIPA."  Id. at 1158 (emphasis added) (citing Coleman, 232

17   F.3d at 1292-94).

18   Here, unlike Alvarez, plaintiff did not file a post-complaint document before summary

19   judgment notifying defendant Koranda of a RLUIPA claim.  Pursuant to the Court's scheduling

20   orders, discovery closed on October 6, 2023, and dispositive motions were due by January 8,

21   2024.  (ECF Nos. 20, 24.)  Plaintiff did not inform defendant Koranda that he intended to raise a

22   RLUIPA claim until February 5, 2024, four months after discovery closed and one month after

23   defendant Koranda moved for summary judgment.  (See Pl. Opp'n, ECF No. 29.)  Also unlike

24   Alvarez, plaintiff's complaint does not allege or even identify a religious practice that plaintiff

25   claimed was substantially burdened.  See Alvarez, 513 F.3d at 1155 (complaint alleged that

26   prison officials substantially burdened plaintiff's religious exercise "by denying him the 'right to

27   participate and practice the Sweat Lodge Ceremony and Sacred Pipe Ceremony," wear a

28   headband, consume tobacco for ceremonial purposes, communicate with his tribe's religious

14

representatives, and participate in group worship). Here, in claim one of the complaint, plaintiff's allegations focus on defendant Koranda's alleged statements in the March 2022 interview that faith-based programs do not "count" as rehabilitation and that "Dr. Koranda's statements made plaintiff feel like he was denied his right to freedom of religion in using his Christian faith to rehabilitate himself." (ECF No. 1 at 4.) The complaint does not identify a religious exercise that plaintiff participates in or allege that defendant Koranda substantially burdened a religious exercise plaintiff participate in to give defendant Koranda fair notice that plaintiff was raising a RLUIPA claim. See Alvarez, 513 F.3d at 1155, 1157; see also Shakur v. Schriro, 514 F.3d 878, 888-89 (9th Cir. 2008) (to state a RLUIPA claim, a prisoner must show that he participates in a "religious exercise" that the State's actions have substantially burdened).

In addition, two weeks after filing his summary judgment opposition, plaintiff filed a motion to amend his complaint to add a RLUIPA claim (ECF No. 33), which further demonstrates that plaintiff recognized that his complaint did not raise a RLUIPA claim. Moreover, in January 2023, after the Court construed the complaint to raise only a First Amendment claim and ordered service only of the First Amendment claim (ECF Nos. 10, 14), plaintiff did not object or inform the Court that he also intended to raise a RLUIPA claim. (See Docket.) Plaintiff did not raise a RLUIPA claim until he filed his opposition to defendant Koranda's summary judgment motion in February 2024. For these reasons, this Court finds that Alvarez is distinguishable and that plaintiff did not provide defendant Koranda with notice of his RLUIPA claim before discovery closed and before summary judgment.

In the opposition, plaintiff also claims for the first time that the secular programs defendant Koranda "coerced" plaintiff to participate in violated plaintiff's Christian religion. (ECF No. 29-2 at 16.) In the opposition, plaintiff also claims for the first time that during the March 25, 2022 interview, defendant Koranda told plaintiff, "you need to stop spending all your time in church and focus on getting into self-help programs that will address your sexual offending." (ECF No. 29-3 at 4.) The Court declines to consider these new claims and theories that were not raised in the complaint and are raised for the first time after the close of discovery in

/ / /

1    plaintiff's summary judgment opposition.[4]  See Coleman, 232 F.3d at 1292-94.

2          D.      Plaintiff's Objection to Defendant Koranda's Declaration

3          Defendant Koranda submitted his own declaration in support of his summary judgment

4    motion.  (ECF No. 26-5.)  Defendant Koranda signed his declaration "under penalty of injury"

5    rather than "under penalty of perjury."  (Id. at 3.)  In his opposition, plaintiff argues that

6    defendant Koranda's declaration should be disregarded because it is not properly verified.  (ECF

7    No. 29-2 at 21.)  On February 2, 2024, defendant Koranda filed a notice of errata regarding his

8    declaration.  (ECF No. 31.)  Attached to the notice of errata is a declaration by defendant Koranda

9    identical to the declaration filed in support of the summary judgment motion except this

10   declaration is signed under penalty of perjury.  (ECF No. 31-1 at 3.)  Good cause appearing, this

11   Court finds that defendant Koranda's verified declaration, filed February 2, 2024, resolves

12   plaintiff's objection to the improperly verified declaration submitted with defendant Koranda's

13   summary judgment motion.

14          E.      First Amendment Free Exercise Claim

15          After screening and Plaintiff's voluntary dismissal of claims 2-6, this action proceeded on

16   a single First Amendment Free Exercise claim against Defendant Koranda.  (See ECF Nos. 10,

17   13, 14.)

18          1.      Legal Standards

19          Inmates "retain protections afforded by the First Amendment, including its directive that

20   no law shall prohibit the free exercise of religion."  O'Lone v. Estate of Shabazz, 482 U.S. 342,

21   348 (1987) (citation omitted).  "The free exercise right, however, is necessarily limited by the fact

22   of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to

23   maintain prison security."  McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam)

24   (citations omitted); see also O'Lone, 482 U.S. at 348; Al Saud v. Days, 36 F.4th 949, 957 (9th

25   Cir. 2022).  To implicate the First Amendment Free Exercise Clause, the prisoner's belief must be

26   _____

27   [4]  In an abundance of caution, this Court notes that even if both of these new theories raised in
     the opposition were considered, defendant Koranda should still be granted summary judgment
     because there is still no substantial burden on plaintiff's exercise of his religion, a required
28   element for plaintiff's First Amendment Free Exercise claim.

1   both sincerely held and rooted in religious belief.  See Al Saud, 36 F.4th at 957.  "A person

2   asserting a free exercise claim must show that the government action in question substantially

3   burdens the person's practice of her religion."  Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir.

4   2015).  As the Ninth Circuit explained:

5           A substantial burden ... place[s] more than an inconvenience on
            religious exercise; it must have a tendency to coerce individuals into
6           acting contrary to their religious beliefs or exert substantial pressure
            on an adherent to modify his behavior and to violate his beliefs.... To
7           ensure that courts afford appropriate deference to prison officials, the
            Supreme Court has directed that alleged infringements of prisoners'
8           free exercise rights be judged under a reasonableness test less
            restrictive than that ordinarily applied to alleged infringements of
9           fundamental constitutional rights. The challenged conduct is valid if
            it is reasonably related to legitimate penological interests.
10

11   Id. at 1031-32 (internal quotations and citations omitted).

12                          2.    Parties' Arguments

13          Defendant Koranda moves for summary judgment on the grounds that Koranda did not

14   unlawfully deprive plaintiff of the right to the free exercise of his religion.[5]  (ECF No. 26-1 at

15   11.)  Defendant Koranda argues that his recommendations that plaintiff pursue additional self-

16   help programming tailored to the nature of plaintiff's commitment offense—like sex offender

17   treatment[6]—did not place a substantial burden on plaintiff's practice of his religion.  (Id. at 11-

18   13.)  Defendant Koranda contends that FAD psychologists are focused on participation in

19   programming that directly addresses the risk factors associated with the inmate's violent and

20   antisocial behavior because it helps determine the inmate's level of psychosocial adjustment of

21   functioning and determine the likelihood of future violence.  (Id. (citing undisputed facts nos. 30-

22   33).)

23

24   ────────────────

25   [5]  Defendant Koranda does not challenge the sincerity of plaintiff's religious beliefs.  (ECF No.
     26-1 at 11 n.1.)

26   [6]  The CRA describes plaintiff's criminal record as reflecting convictions for four counts of rape
     following a 1990 arrest.  (ECF No. 26-5 at 8.)  The CRA states that in 1997, plaintiff was arrested
27   for his commitment offenses, which resulted in a Three Strikes sentence.  (Id.)  In May 1997,
     plaintiff raped a woman on the hood of his vehicle.  (Id.)  In July 1997, plaintiff attempted to rape
28   a woman.  (Id.)

                                             17

1   In his summary judgment opposition,[7] Plaintiff argues that Koranda placed a substantial

2   burden on the practice of plaintiff's religion because Koranda did not count faith-based programs

3   as self-help or rehabilitation.  (See ECF No. 29-2.)  In support of this argument, plaintiff cites his

4   own declaration submitted in support of his opposition.  (ECF No. 29-3.)  Plaintiff argues that

5   defendant Koranda failed to credit plaintiff's faith-based programs.  (Id.)

6   *3.      Analysis*

7   This Court recommends that summary judgment be granted for defendant Koranda

8   because plaintiff fails to make a showing sufficient to establish the existence of an essential

9   element of his First Amendment claim, for which plaintiff bears the burden of proof at trial.  See

10  Celotex, 477 U.S. at 322.  Even when taking all reasonable inferences in plaintiff's favor and

11  considering plaintiff's pro se status, plaintiff fails to show that defendant Koranda substantially

12  burdened plaintiff's practice of his religion based on a single incident—statements Koranda, a

13  Board of Parole Hearings forensic psychologist, made to plaintiff in a March 2022 interview

14  conducted to complete a psychological diagnostic evaluation of plaintiff in preparation for a

15  parole suitability hearing (UDF 2, 3).  The Ninth Circuit has consistently held that brief, short-

16  term, or sporadic incidents do not constitute a substantial burden on the free exercise of religion.

17  See Austin v. Brown, 2022 WL 1537366, at *1 (9th Cir. May 16, 2022) (affirming summary

18  judgment for defendants on First Amendment free exercise and RLUIPA claims where prisoner

19  "failed to show that he was unable to engage in his religious group activities"); Saif'ullah v.

20  Cruzen, 735 F. App'x 415, 416 (9th Cir. 2018) (affirming summary judgment for defendants on

21  First Amendment free exercise claim based on interruption of congregational prayer where

22  prisoner "failed to raise a genuine dispute of material facts as to whether defendants' conduct

23  constituted a substantial burden"); Howard v. Skolnik, 372 F. App'x 781, 782 (9th Cir. 2010)

24  (affirming summary judgment for defendants on First Amendment free exercise claim where two

25  incidents of interference with prisoner's fasting did not constitute a substantial burden on

26  prisoner's exercise of religion); Canell v. Lightner, 143 F.3d 1210, 1215 (9th Cir. 1998)

27

28  [7]  As described above, the Court does not address new claims and theories improperly raised by
    plaintiff for the first time in plaintiff's summary judgment opposition.

1   (affirming summary judgment for defendants on First Amendment free exercise claim where

2   interference with prisoner's prayers "on some occasions during the brief period" did not

3   constitute a substantial interference).

4           In addition, Defendant Koranda's statements to plaintiff in the March 2022 interview are

5   not the type of coercion contemplated by the Free Exercise Clause.  See Uhuru v. Bonnifield,

6   2021 WL 3870479 (C.D. Cal. June 21, 2021), findings and recommendations adopted, 2021 WL

7   3857456 (C.D. Cal. Aug. 30, 2021).  Uhuru v. Bonnifield is instructive.  In Uhuru, plaintiff

8   alleged that defendants interfered with his practice of his Nubian Hebrew Israelite religion.  2021

9   WL 3870479 at *1.  Plaintiff performed secular music with musical instruments for various

10  events for which he earned good time credits.  Id. at *3.  Defendants denied plaintiff's request to

11  have his religious group certified as an Inmate Leisure Time Activity Group, which would have

12  allowed plaintiff to receive good time credits for playing religious music.  Id.  Plaintiff argued

13  that playing secular music created a substantial burden on the practice of his religion because he

14  received good time credits for playing the secular music but not for playing religious music.  Id.

15  The Uhuru court found that "[t]he fact that defendants' denial may have led plaintiff to choose to

16  engage in secular activities to earn good time credits, rather than religious activities that will not

17  earn him credits, is not the type of coercion contemplated by Free Exercise … jurisprudence."  Id.

18  at *16.  Like Uhuru, statements by defendant Koranda in the March 2022 interview that may have

19  led plaintiff to engage in secular programs to help his parole efforts is not the type of

20  governmental coercion contemplated by the First Amendment Free Exercise clause.  See Uhuru,

21  2021 WL 3870479 at *16.

22          Though there are disputes of fact regarding what statements Koranda made during the

23  interview, these disputes are not material because even if defendant Koranda made the statements

24  plaintiff alleges, those one-time statements made in a single interview do not establish a

25  substantial burden on the practice of plaintiff's religion and are not the type of governmental

26  coercion contemplated by the Free Exercise clause.  See Uhuru, 2021 WL 3870479 at *16;

27  Austin, 2022 WL 1537366 at *1; Saif'ullah, 735 F. App'x at 416; Howard, 372 F. App'x at 782;

28  Canell, 143 F.3d at 1215.  Therefore, these facts are not material because they do not affect the

1   outcome.  See Anderson, 477 U.S. at 248.

2        Finally, because plaintiff has not established that Koranda's one-time interview statements

3   substantially burdened plaintiff's religious exercise, the Court does not address the Turner v.

4   Safley, 482 U.S. 78 (1987), factors, which determine whether a prison regulation or policy is

5   reasonably related to legitimate penological interests.  See Shakur, 514 F.3d at 884, 889 ("Once

6   the plaintiff establishes that the challenged state action substantially burdens his religious

7   exercise, the government bears the burden of establishing that the regulation serves a compelling

8   government interest and is the least restrictive means of achieving that interest."); Smith v.

9   Gipson, 2022 WL 35619, at *6 (N.D. Cal. Jan. 4, 2022), aff'd, 2023 WL 4421389 (9th Cir. July

10  10, 2023).

11            *3.   Conclusion*

12       For the reasons discussed above, this Court recommends that defendant Koranda's

13  summary judgment motion be granted.

14       F.    Qualified Immunity

15            *1.   Legal Standards*

16       "The doctrine of qualified immunity protects government officials 'from liability for civil

17  damages insofar as their conduct does not violate clearly established statutory or constitutional

18  rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223,

19  231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity

20  shields an officer from liability even if his or her action resulted from "'a mistake of law, a

21  mistake of fact, or a mistake based on mixed questions of law and fact.'"  Id. (quoting Groh v.

22  Ramirez, 540 U.S. 551, 567 (2004)).

23       "Determining whether officials are owed qualified immunity involves two inquiries:

24  (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged

25  show the official's conduct violated a constitutional right; and (2) if so, whether the right was

26  clearly established in light of the specific context of the case."  Robinson v. York, 566 F.3d 817,

27  821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  A right is "clearly

28  established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are]

1    sufficiently clear' that 'every reasonable official would [have understood] that what he is doing

2    violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v.

3    Creighton, 483 U.S. 635, 640 (1987)).

4                *2.    Analysis*

5          Defendant Koranda also moves for qualified immunity on the grounds that he did not

6    violate plaintiff's constitutional rights and because plaintiff cannot establish that any allegedly

7    violated right was clearly established.  Taking the facts in the light most favorable to plaintiff, for

8    the reasons discussed above, this Court finds that defendant Koranda did not violate plaintiff's

9    First Amendment Free Exercise rights.  For this reason, this Court need not address the second

10    prong of the qualified immunity analysis.  See County of Sacramento v. Lewis, 523 U.S. 833, 841

11    n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity

12    is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional

13    right at all.").  Defendant Koranda is therefore entitled to qualified immunity for plaintiff's First

14    Amendment Free Exercise claim.

15    **V.      PLAINTIFF'S MOTION TO AMEND**

16          Plaintiff also moves to amend his complaint to add a new RLUIPA claim and to cure any

17    deficiencies regarding his RLUIPA claim argued by defendant Koranda in the reply to plaintiff's

18    summary judgment opposition.  (ECF No. 33 at 1.)   Defendant Koranda opposes plaintiff's

19    motion to amend on three grounds:  (1) plaintiff failed to submit a proposed amended complaint;

20    (2) plaintiff failed to demonstrate good cause under Federal Rule of Civil Procedure 16; and

21    (3) leave to amend is not proper under Federal Rule of Civil Procedure 15.  (ECF No. 35.)

22          A.     Failure to Submit Proposed Amended Complaint

23          Plaintiff did not file a proposed amended complaint with the pending motion.  Because

24    plaintiff did not submit a proposed amended complaint, the Court is unable to evaluate it.  On this

25    ground, plaintiff's motion to amend should be denied.  See King v. Villegas, 2019 WL 5536266,

26    at *2 (E.D. Cal. Oct. 25, 2019) (denying motion to file amended complaint based on plaintiff's

27    failure to submit proposed amended complaint).

28          Although plaintiff failed to submit a proposed amended complaint, this Court also

considers whether amendment is proper under Federal Rules of Civil Procedure 16, amendment of the scheduling order, and Rule 15, amendment of pleadings.

> B.   Rule 16

> 1.   *Legal Standard*

Where the request to amend is after a date established in the Rule 16 scheduling order, the party must first show good cause to amend before the court considers whether amendment is appropriate under Rule 15.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992).  Indeed, motions filed after the deadlines set in the scheduling order are untimely and may be denied solely on this ground.  Id. at 608-09.  "A scheduling order 'is not a frivolous piece of paper, idly entered[.]'"  Id. at 610 (citation omitted).  "Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier."  Id.

Amendments of the scheduling order are governed by Rule 16 of the Federal Rules of Civil Procedure, which provides that a scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The district court has broad discretion in supervision of the pretrial phase of litigation.  Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).  Rule 16's good cause standard considers the diligence of the party seeking amendment and the pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the amendment.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).  While prejudice to the opposing party could "supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  Id. at 609.  Therefore, if the party moving for amendment of the scheduling order has not demonstrated diligence, the inquiry should end and the motion to amend should be denied.  Id.

> 2.   *Analysis*

Pursuant to the discovery and scheduling order filed June 12, 2023, the discovery deadline was October 6, 2023 and the dispositive motion deadline was December 29, 2023.  (ECF No. 20.)  The Court granted defendant Koranda a 10-day extension of time to file his summary judgment

1  motion.  (ECF No. 24.)  Defendant Koranda timely filed his summary judgment motion on

2  January 8, 2024.  (ECF No. 26.)  Plaintiff filed his motion to amend on March 6, 2024—five

3  months after the close of discovery and two months after defendant moved for summary

4  judgment.  (ECF No. 33.)  In his opposition, defendant Koranda argues that plaintiff failed to

5  show good cause under Rule 16 in support of the motion to amend.  (ECF No. 35 at 4-5.)

6         This Court agrees and finds that plaintiff failed to show good cause for the filing of his

7  motion to amend five months after the close of discovery and two months after defendant

8  Koranda moved for summary judgment.  Plaintiff's failure to raise the RLUIPA claim in the

9  original complaint demonstrates neither diligence nor good cause.  Accordingly, plaintiff's

10  motion to amend may be denied as untimely under Rule 16.  See In re W. States Wholesale Nat.

11  Gas Antitrust Litig., 715 F.3d 716, 737-38 (9th Cir. 2013) ("The good cause standard typically

12  will not be met where the party seeking to modify the scheduling order has been aware of the

13  facts and theories supporting amendment since the inception of the action.").

14         C.      Rule 15

15         Though the Court finds that plaintiff failed to show good cause to amend, in an abundance

16  of caution, the Court also considers whether amendment would be proper under Rule 15.

17              1.      Legal Standard

18         Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's

19  pleading once as a matter of course twenty-one days after serving it, or if a response was filed,

20  within twenty-one days after service of the response.  Fed. R. Civ. P. 15(a)(1).  Otherwise, a party

21  may amend only by leave of the court or by written consent of the adverse party, and leave shall

22  be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).

23         "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so

24  requires.'"  AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006)

25  (quoting Fed. R. Civ. P. 15(a)).  However, courts "need not grant leave to amend where the

26  amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue

27  delay in the litigation; or (4) is futile."  AmerisourceBergen Corp., 465 F.3d at 951.  The burden

28  to demonstrate prejudice falls upon the party opposing the amendment.  DCD Programs, Ltd. v.

1   Leighton, 833 F.2d 183, 187 (9th Cir. 1987).  Absent prejudice, or a strong showing of any of the

2   remaining three factors, a presumption exists under Rule 15(a) in favor of granting leave to

3   amend.  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  Further,

4   undue delay alone is insufficient to justify denial of a motion to amend.  Bowles v. Reade, 198

5   F.3d 752, 758 (9th Cir. 1999).

6                    *2.*      *Analysis*

7                         a.      Futility

8           For the following reasons, this Court finds that plaintiff's request to amend his complaint

9   to add a new RLUIPA claim is futile.  A claim under RLUIPA is similar to a First Amendment

10  claim in that plaintiff must initially demonstrate that defendant Koranda's actions constitute a

11  "substantial burden" on the exercise of plaintiff's religious beliefs.  See Warsoldier v. Woodford,

12  418 F.3d 989, 994 (9th Cir. 2005).  "The RLUIPA substantial-burden test is the same as that used

13  under the First Amendment."  Sprouse v. Ryan, 346 F. Supp. 3d 1347, 1357 (D. Ariz. 2017)

14  (citing Warsoldier, 418 F.3d at 995-96; Meza v. California Department of Corrections, 2017 WL

15  5500625, at *5 (E.D. Cal. Nov. 16, 2017) ("The RLUIPA substantial burden test is analyzed

16  within the same Free Exercise framework.")).

17          Plaintiff's motion to amend makes clear that plaintiff's proposed RLUIPA claim is based

18  on the same facts on which plaintiff's First Amendment claim proceeds.  Plaintiff's RLUIPA

19  claim is without merit for the same reason this Court recommends that defendant Koranda's

20  summary judgment motion be granted as to plaintiff's First Amendment claim: plaintiff fails to

21  demonstrate that defendant Koranda substantially burdened plaintiff's exercise of his religious

22  beliefs.  Accordingly, plaintiff's motion to amend his complaint to add a new RLUIPA claim is

23  futile.

24          In addition, plaintiff is not entitled to money damages for alleged RLUIPA violations,

25  whether defendant Koranda is sued in his official or individual capacity.  See Sossamon v. Texas,

26  563 U.S. 277, 285-86 (2011) (claims for money damages under RLUIPA against defendants, who

27  are state employees, in their official capacities are barred by Eleventh Amendment); Jones, 791

28  F.3d at 1031 (RLUIPA does not authorize suits for damages against state officials in their

                                                    24

1   individual capacities).  In addition, a claim for damages under RLUIPA against the State of

2   California or an agency of the State of California is barred by the Eleventh Amendment.  See

3   Ellington v. California Dept. of Corr. And Rehab., 2022 WL 3021389, at *4 (C.D. Cal. May 23,

4   2022), findings and recommendations adopted, 2022 WL 3018057 (C.D. Cal. July 28, 2022).

5   Accordingly, allowing plaintiff to amend his complaint to seek money damages under RLUIPA is

6   also futile.

7                         b.      Prejudice/ Undue Delay in Litigation

8          Defendant Koranda argues that granting plaintiff's motion to amend would cause him to

9   suffer prejudice because defendant Koranda would be required to assert new defenses in response

10  to the RLUIPA claim, re-file his summary judgment motion and significantly delay resolution of

11  this action.

12         At the outset, this Court observes that it does not appear that defendant Koranda is a

13  proper defendant for a claim for injunctive relief under RLUIPA.  The proper defendant for a

14  claim for injunctive relief under RLUIPA is the official who could appropriately respond to a

15  court order on injunctive relief should one be issued.  See Epps v. Grannis, 2013 WL 5348394, at

16  *3 (S.D. Cal. Sept. 23, 2013).  To the extent plaintiff requests preparation of a new CRA that

17  gives appropriate consideration to his religious activities, it does not appear that defendant

18  Koranda could grant this relief.  Therefore, plaintiff would have to name a new defendant,

19  presumably the Board, for his new RLUIPA claim.  Allowing plaintiff to name a new defendant

20  at this late stage would significantly delay resolution of this action, although defendant Koranda

21  would not be named as a defendant for this new claim.

22         If the Court is incorrect and defendant Koranda could respond to an order for injunctive

23  relief, this Court finds that defendant Koranda would be severely prejudiced if plaintiff were

24  allowed to amend to add a new RLUIPA claim for injunctive relief.  Permitting plaintiff to amend

25  his complaint five months after the close of discovery and two months after defendant moved for

26  summary judgment, would significantly delay resolution of this action.  This delay, as well as the

27  added burden of reopening discovery and preparing a second summary judgment motion, would

28  severely prejudice defendant Koranda.

c.    Bad Faith

In the opposition to the motion to amend, defendant Koranda argues that plaintiff's motion to amend is brought in bad faith.  Bad faith has been construed by the Ninth Circuit as a plaintiff "merely [ ] seeking to prolong the litigation by adding new but baseless legal theories." Griggs v. Pace American Group, Inc., 170 F.3d 877, 881 (9th Cir. 1999).  Although this Court finds that plaintiff's request to amend to add a RLUIPA claim is futile and would result in significant delay, this Court does not find that plaintiff "merely seeks to prolong" this action. Accordingly, this Court finds that plaintiff's motion to amend is not made in bad faith.

d.    Conclusion

The Rule 15 factors weigh strongly in favor of denying plaintiff's motion to amend because there is a strong showing of futility of amendment and undue delay.  Accordingly, this Court finds that plaintiff's motion to amend is not proper and should be denied.

**VI.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to transfer (ECF No. 32) is denied; and

IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion to amend (ECF No. 33) be denied;

2.  Defendant Koranda's summary judgment motion (ECF No. 26) be granted and judgment be entered for defendant Koranda; and

3.  The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 19, 2024

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Gonz1345.sj(3)/2